UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT F. BURY,

               Plaintiff,

v.

NCS POWER INC., et al.,

               Defendants.

CASE NO. C12-5641 BHS

ORDER GRANTING
DEFENDANT LUMERIA'S
MOTION FOR SUMMARY
JUDGMENT, GRANTING
DEFENDANT ESTATE'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN
PART AND DENYING IN PART
DOUGLAS CHANDLER'S
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on Defendant Lumeria Research, Inc.'s ("Lumeria") motion for summary judgment (Dkt. 102), Defendant Estate of Lance Chandler's ("Estate") motion for summary judgment (Dkt. 106), and Defendant Douglas Chandler's motion for summary judgment (Dkt. 109). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants Lumeria's motion, grants the Estate's motion, and grants in part and denies in part Douglas Chandler's motion for the reasons stated herein.

ORDER - 1

# I. PROCEDURAL HISTORY

On September 13, 2013, Plaintiff Robert Bury ("Bury") filed a fourth amended complaint against Defendants NCS Power, Inc. ("NCS"); Estate of Lance Chandler; Lumeria; Leanne Erdelbrock; Douglas Chandler; Lance Lynn Chandler Trust; The Allyn Group; Wade Au; and Robert Chandler, asserting causes of action for breach of contract, wage claim under RCW 49.52.010, *et seq.*, alter ego liability, and unjust enrichment/quantum meruit.  Dkt. 94.

On October 15, 2013, Lumeria filed a motion for summary judgment.  Dkt. 102. On October 16, 2013, Estate and Douglas Chandler filed motions for summary judgment. Dkts. 106 & 109.  On November 11, 2013, Bury responded.  Dkts. 120, 125, & 128.  On November 15, 2013, Douglas Chandler replied.  Dkt. 136.  On November 18, 2013, Estate replied.  Dkt. 139.  On November 19, 2013, Lumeria replied.  Dkt. 141.

On November 11, 2013, Bury filed a motion for leave to file an overlength brief. Dkt. 121.  On November 14, 2013, Douglas Chandler filed a motion for leave to file excess pages.  Dkt. 135.  On November 18, 2013, Lumeria and the Estate filed a motion for leave to file a late reply.  Dkt. 141.  The Court grants their three motions for leave and will consider all the briefs on file.

# II. FACTUAL BACKGROUND

NCS was incorporated in 2007 and was a company in the business of LED lighting for commercial applications.  Dkt. 110, Declaration of Douglas Chandler ("DC Dec."), ¶ 3.  The company was formed by Lance Chandler, who asked Douglas Chandler to serve on the board of directors.  *Id.*  In mid 2011, NCS's officers contacted Bury to inquire

1  about hiring him as NCS's President and CEO.  *Id*. ¶ 8.  Eventually Bury signed an

2  employment agreement with NCS with the understanding that his employment would

3  begin on June 1, 2011.  *Id*. ¶ 9; Dkt. 111, Declaration of Brian Keely at 57–61.

4       In May 2011, Douglas Chandler learned from one of NCS's officers that NCS was

5  quickly running out of money and would not have the financial resources to pay Bury.

6  DC Dec., ¶ 10.  On May 31, 2011, Douglas Chandler called Bury and told him not to

7  begin work for NCS.  *Id*.  Douglas Chandler asserts that Bury agreed to work for NCS on

8  the condition that NCS write a check in the amount of Bury's signing bonus and Bury

9  would cash the check once NCS had the resources to cover the check.  *Id*.

10       Bury continued to work for NCS even though NCS's financial condition

11  deteriorated.  *Id*. ¶¶ 10, 11.  On April 19, 2012, Bury met with Douglas and Robert

12  Chandler.  *Id*. ¶ 15.  Bury memorialized the conversation in an email to Douglas Chandler

13  and stated that he demanded back pay, severance, and other expenses or he would

14  commence litigation against NCS.  *Id.*; Dkt. 128 at 23.  Douglas Chandler asserts that

15  Bury's contract naturally expired, whereas Bury asserts that he terminated his contract for

16  good cause.

17       Lumeria was formed in 2012 by Lance Chandler and was also in the business of

18  LED lighting.  Bury alleges that Lumeria is a successor to NCS.

19                                       **III. DISCUSSION**

20  **A.**    **Motions to Strike**

21       Lumeria moves to strike the declaration of William Omaits and attached exhibits.

22  Dkt. 142 at 3.  Mr. Omaits is a financial and forensic analyst and declares that the

1  attached exhibits were found in boxes of documents, which he claims were the original

2  Lumeria files.  Dkt. 132.  Lumeria argues that this is improper authentication of the

3  documents in question.  Dkt. 142.  The Court agrees because Mr. Omaits needs to submit

4  more information than the fact that he found documents in boxes he believes came from

5  Lumeria.  Therefore, the Court grants the motion and will not consider this evidence for

6  the current summary judgment motions.

7      Lumeria also moves to strike a number of exhibits attached to Bury's declaration

8  and Douglas Chandler's bankruptcy deposition.  Dkt. 142 at 2.  With regard to the

9  former, the Court will not rely on any inadmissible hearsay when considering the instant

10  motions.  With regard to the latter, assuming Douglas Chandler can be called during trial,

11  his previous deposition given under penalty of perjury is admissible.

12      Douglas Chandler also moves to strike documents submitted by Bury in support of

13  his response.  Dkt. 136 at 12–15.  The Court has reviewed the contested evidence and

14  finds that the motion for summary judgment can be determined without relying on this

15  evidence.  Therefore, the motion is denied as moot.

16  **B.    Summary Judgment**

17      Lumeria, the Estate, and Douglas Chandler move for summary judgment on all of

18  Bury's claims against them.

19          **1.    Standard**

20      Summary judgment is proper only if the pleadings, the discovery and disclosure

21  materials on file, and any affidavits show that there is no genuine issue as to any material

22  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

1  The moving party is entitled to judgment as a matter of law when the nonmoving party

2  fails to make a sufficient showing on an essential element of a claim in the case on which

3  the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

4  323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

5  could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

6  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

7  present specific, significant probative evidence, not simply "some metaphysical doubt").

8  *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

9  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

10  jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

11  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

12  626, 630 (9th Cir. 1987).

13        The determination of the existence of a material fact is often a close question. The

14  Court must consider the substantive evidentiary burden that the nonmoving party must

15  meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

16  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

17  issues of controversy in favor of the nonmoving party only when the facts specifically

18  attested by that party contradict facts specifically attested by the moving party. The

19  nonmoving party may not merely state that it will discredit the moving party's evidence

20  at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

21  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

22

1  nonspecific statements in affidavits are not sufficient, and missing facts will not be

2  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

3        **2.**      **Douglas Chandler's Motion**

4        Douglas Chandler moves for summary judgment on Bury's claim for personal

5  liability as an officer of NCS, Bury's claim for severance pay, and Bury's claim for

6  personal liability as a member of the Allyn Group.

7        **a.**      **Knowingly Submitted**

8        In Washington, an officer of an employer may be liable for unpaid wages unless

9  the employee "knowingly submitted" to the non-payment.  RCW 49.52.070.  To reach

10  the conclusion that an employee "knowingly submitted" to the unlawful withholding of

11  wages requires the court to find that "the [employee] must have deliberately and

12  intentionally deferred to [the employer] the decision of whether they would ever be paid."

13  *Chelius v. Questar Microsystems, Inc.*, 107 Wn. App. 678, 682 (2001).

14        In this case, the Court is unable to find that Bury intentionally and deliberately

15  deferred to NCS the decision whether he would ever be paid.  Although the Court agrees

16  with Douglas Chandler that the admissible facts in the record show that Bury had

17  authority to make financial decisions and that Bury had access to NCS's financial

18  information, these facts do not show an intentional and deliberate decision for purposes

19  of summary judgment.  Taking all the facts and inferences in the light most favorable to

20  Bury, there are material questions of fact whether Bury's actions constitute a knowing

21  submission of payment decisions to NCS.  It appears that Bury may have been able to

22  request compensation when the company obtained financial resources and that he chose

1   to pay other employees instead of himself, but these facts do not show that he deferred all

2   control over his compensation to NCS.  Moreover, Bury's allegation that Lance Chandler

3   threatened to sue Bury on behalf of NCS if Bury quit due to nonpayment of Bury's wages

4   is evidence in support of Bury's position that he did not defer all payment decisions to

5   NCS.   Therefore, the Court denies Douglas Chandler's motion for summary judgment on

6   this issue because material questions of fact exist.

7               **b.      Severance**

8               In this case, the parties dispute whether Bury terminated his employment

9   agreement for good cause or whether the agreement expired at the end of its term.  Bury's

10  assertion that he terminated the agreement for nonpayment of compensation is lacking in

11  several material respects.  The Employment Agreement provides that Bury may resign

12  for "good reason" that is limited to three explicit reasons, only one of which is relevant

13  here:

14          material breach by the Company of any provision of the Agreement and, if
            such breach is susceptible to cure, failure by the Company, within 30 days
15          after receiving the Employee's written notice and demand for cure, to effect
            such cure.
16

17  Employment Agreement, § 3.C.  In support of his argument, Bury submits a copy of one

18  email stating that Bury will terminate his "upcoming" employment agreement for a

19  specific payout, including severance, and, if he receives that payment, he will not proceed

20  with litigation.  Dkt. 128 at 23.  This email is wholly inadequate to meet the provisions of

21  the Employment Agreement.  The email is not written notice and demand to cure any

22  alleged breach of the current agreement; it is notice of non-renewal of a subsequent

ORDER - 7

1   agreement.  Moreover, there is no opportunity for NCS to cure any alleged breach.

2   Therefore, Bury has failed to show that he resigned for good reason pursuant to the

3   Employment Agreement.

4          With regard to Douglas Chandler's position, the Employment Agreement

5   automatically renewed unless one party gave written notice of the party's intention not to

6   renew the agreement.  Employment Agreement § 1.B.  Bury gave Douglas Chandler

7   notice of his intent not to renew, and the contract expired at the end of the term, or May

8   31, 2012.  Moreover, Bury's action in conformance with this expiration, not working

9   after May 31, supports the conclusion that the agreement expired on its own terms.

10  Therefore, the Court grants Douglas Chandler's motion for summary judgment on Bury's

11  claim for severance.

12          **c.     The Allyn Group**

13          In his fourth amended complaint, Bury added a new claim against Douglas

14  Chandler individually for his failure to properly dissolve the Allyn Group.  *Compare*

15  Dkts. 1, 19, 56, & 66 *with* Dkt. 94.  Douglas Chandler filed for bankruptcy and, on June

16  10, 2013, the Bankruptcy Court issued a discharge.  Douglas Chandler argues that Bury

17  may not bring this claim for pre-petition conduct after receiving a discharge.  Dkt. 136 at

18  10–11.  The Court agrees.  *See In re Jastrem*, 224 B.R. 125, 128 (E.D. Cal. Bankr. 1998).

19  Moreover, Bury fails to address this argument in his response.  Therefore, the Court

20  grants Douglas Chandler's motion for summary judgment on Bury's claim for personal

21  liability as a member of The Allyn Group.

22

1    **3.    Lance Chandler's Marital Community's Motion**

2         An "agent" under RCW 49.52.050 and RCW 49.52.070 "must have some power

3    and authority to make decisions regarding wages or the payment of wages." *Ellerman v.*

4    *Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 522 (2001).

5         In this case, Bury argues that Lance Chandler was an agent of NCS, but fails to

6    submit admissible evidence in support of that position.  Bury asserts that Lance Chandler

7    had power and control over Bury's wages because (1) Lance Chandler controlled funding

8    of NCS, (2) Lance Chandler interviewed Bury, and (3) Lance Chandler threatened Bury

9    with litigation if Bury quit due to nonpayment of wages.  Dkt. 125 at 9–10.

10   Unfortunately for Bury, none of these assertions, even if true, show that Lance Chandler

11   had power and control over Bury's wages or the payment of wages.  Controlling a

12   company's funding has nothing to do with how employees are paid with those funds,

13   interviewing an employee has nothing to do with payment of wages, and threatening a

14   lawsuit if an employee quits has nothing to do with the payment of wages.  Therefore, the

15   Court grants the Estate's motion for summary judgment.

16   **4.    Lumeria**

17        Lumeria moves for summary judgment on Bury's claims for successor liability

18   and unjust enrichment or quantum meruit.  Dkt. 104.

19        **a.    Successor Liability**

20        In Washington, the "general rule is that there is no corporate successor liability."

21   *Payne v. Saberhagen Holdings, Inc.*, 147 Wn. App. 17, 25 (2008).  There are, however,

22   four narrow exceptions to this general rule:

(1) the successor expressly or impliedly assumes the obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.

*Martin v. Abbott Labs.*, 102 Wn.2d 581, 619 (1984).

In this case, Bury argues that "Lumeria was a spinoff from NCS Power, Inc." Dkt. 120 at 20. It is unclear what narrow exception includes a "spinoff." Moreover, Bury fails to show that, under any Washington rule of law, Lumeria assumed successor liability. *See* Dkt.120 at 20–24. On the other hand, Lumeria has shown that the only actual connection between the two companies was Lance Chandler and, for a brief period of time, the same office space. Dkt. 104 at 5–6. More is required to show successor liability, and Bury has completely failed to submit anything more. Therefore, the Court grants Lumeria's motion for summary judgment on Bury's claim for successor liability.

### b.    Unjust Enrichment or Quantum Meruit

Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it. *Young v. Young*, 164 Wn. 2d 477, 483 (2008). Quantum meruit is the method of recovering the reasonable value of services provided under a contract implied in fact. *Id*. at 485.

In this case, Bury's claims survived a motion to dismiss because he alleged that he worked past the expiration of the term of his contract. Dkt. 53 at 5. For the instant motion, Lumeria submits admissible evidence in support of the fact that Bury did not work past the end of his contract. Dkt. 104 at 7. Bury counters that Lumeria should be

1  held liable for his unpaid wages because "Lumeria enjoyed all the fruits of his work and

2  did not pay [NCS], or [Bury], any consideration in return."  Dkt. 120 at 25.  Not only has

3  Bury failed to cite any evidence in support of this assertion, but the assertion does not

4  give rise to an implied contract.  Therefore, the Court grants Lumeria's motion for

5  summary judgment on Bury's unjust enrichment or quantum meruit claim.

6                                           **IV. ORDER**

7       Therefore, it is hereby **ORDERED** that Lumeria's motion for summary judgment

8  (Dkt. 102) is **GRANTED**, the Estate's motion for summary judgment (Dkt. 106) is

9  **GRANTED**, and Douglas Chandler's motion for summary judgment (Dkt. 109) is

10 **GRANTED in part** and **DENIED in part** as stated herein.

11      Dated this 18th day of December, 2013.

12

13

14                               BENJAMIN H. SETTLE
                                 United States District Judge

15

16

17

18

19

20

21

22